## BULLOCK *vs.* ADAMS' EXECUTORS and others.

1. Courts of equity do not, in general, consider the time of performance as of the essence of a contract for the sale of lands; but hold, that it may become of the essence by being expressly made so by the contract itself; or by notice from the other party insisting upon performance at a time fixed; or by the subject matter of the contract and its surrounding circumstances.

2. The rule which allows time to be disregarded often causes injustice, and ought not to be extended further than now established.

3. Under the prayer for general relief in a bill, by a purchaser of land, for specific performance, a court of equity might have power to direct the money paid to be refunded to the complainant, if he had any legal right to have it refunded, upon the principle that when a matter is before the court properly for relief which can only be had in equity, it will grant such other relief arising out of the case as the party is entitled to, although the relief could be had at law; but it can grant only the relief which the complainant is entitled to at law.

4. In sales by auction and other sales, where it is stipulated that the per centage, or part paid at the contract, shall be forfeited if the purchaser does not comply with his contract, such payment cannot be recovered at law or in equity.

This suit was brought by Maria Bullock, wife of Smith W. Bullock, through her next friend, to compel the specific performance of a contract for the conveyance of land. The

contract was made by Mary Livingston Adams, wife of the defendant, George A. Adams, September 27th, 1864. In November, 1864, Mrs. Adams died, having made and duly executed a will, authorizing her executors to convey her real estate, and appointing the defendants, William F. Day and George A. Adams, the executors. They made a new contract with Mrs. Bullock, extending the time for performance of her part of the contract of sale from May 1st to August 1st, 1865. The contract was not performed by her within the time so extended, or within the fifteen days after, for which it was further extended by Adams. And on the 17th of October, 1866, the executors entered into a written contract with Lucia E. Lee, wife of Uriah M. Lee, to convey the lands to her. They put her in possession on the 20th of February, 1867, and delivered to her a deed for the land on the 27th of March, 1867. The bill in this case was filed on the 25th of March, 1867, praying for a specific performance of the contract by a conveyance of the lands. Adams and Day are made defendants, both individually and as executors of Mary L. Adams; and Lucia E. Lee and her husband are made defendants, on account of the agreement to sell to them.

The hearing of the cause was had upon bill, answers, and proofs.

*Mr. B. Williamson*, for complainant.

*Mr. A. V. Schenck*, for defendants.

The complainant is not entitled to the relief prayed for in her bill, because—

1. She is in default, and has not performed the agreement on her part. 1 *Story's Eq. Jur.*, § 771. This fact is shown by the weight of evidence in the case; and the *fact* being established, the *law* is too well settled to admit of dispute.

2. The terms for the performance and completion of the contract have not, in point of *time*, been complied with by the complainant. *Time* here is of the *essence* of the *contract*. 1 *Story's Eq. Jur.*, § 776; *Merritt* v. *Brown*, 4 *C. E. Green* 286.

Again: 1. There has been a change of circumstances since the contract in question was made: 1. By sale thereof to the defendant Lee. 2. By increase of the value thereof.

2. Compensation for delay cannot be given. The evidence shows that Adams suffered not only great loss of time in his business, but spent the money paid on the contract during the delay, in the vain expectation and hope of its being eventually performed by the complainant.

3. The complainant has not shown herself *ready, desirous, prompt,* and *eager* to perform the contract, but, on the contrary, has manifested nothing but procrastination and unwillingness.

But the complainant asks that Adams be decreed a trustee for the complainant for so much of the purchase money as has been paid by the complainant to Adams under the contract; or that the Chancellor do award compensation in damages to the complainant, by reason of Adams not being in position to convey the property to complainant, having conveyed the same to the defendant Lee.

We answer: 1. If the complainant is not entitled to *specific performance,* she is not entitled to *any relief.*

2. The complainant is bound by the terms of her own contract; and, having failed to perform this, she is not entitled to receive back the moneys which she has paid thereon.

3. A court of equity will not sustain a bill merely for the purpose of assessing damages. 5 *Johns. C. R.* 193.

Again: the cases cited by the complainant's counsel are all based and settled on the principle that the complainant *is entitled to relief:* to *a specific performance;* but that the defendant having put it out of his power to perform by having conveyed the premises, the court; having jurisdiction of the case, will award damages for non-performance. The case now before the court is entirely different in fact and principle.

The CHANCELLOR.

The facts of the case, as to which there is little or no dispute, are these: Mary Livingston Adams, through the

agency of her husband, on the 27th of September, 1864, agreed to sell and convey to the complainant a farm, situate in Union county, known as the Crane farm, for $30,000; of which $500 was to be paid at the time of the contract, $4500 on or before the 1st day of January, 1865, $10,000 on or before the 1st of April, 1865, when a deed was to be given to the complainant, and she was to give a mortgage for $5000, and assume a mortgage for $10,000 then upon the farm. It is disputed whether this contract was in writing; but as it is admitted in the answer, and was in part performed, and its existence recognized in a subsequent written contract relating to it, that question is of no importance. The complainant paid on the contract at the making $100, September 27th, 1864; $500, October 8th, 1864; $300, October 16th, 1864; $600, February 20th, 1865; $3000, March 11th, 1865; and $2000, May 11th, 1865, amounting in all to $6500.

The complainant, not being able to make the payments as stipulated, on the 13th of May, 1865, a new agreement in writing was entered into between her and the executors of Mrs. Adams, by which they agreed that the complainant might take possession of and cultivate the farm, except the house, out-buildings, and pasture; and the complainant agreed, on or before August 1st, 1865, to pay the balance then due upon the purchase, with interest from October 1st, 1864, on all balances due, and also, to pay Adams a fair and reasonable sum for all expenses incurred by reason of her failure to make payments as stipulated; and she further agreed that if she should fail to make the payments as aforesaid by the 1st day of August, 1865, she would quit and surrender all claims of every name and nature to the farm, and everything upon it, and forfeit all payments made prior thereto.

On the 1st of August, 1865, the complainant was not prepared to make the payment, and then agreed with the defendant Adams, by a writing endorsed on this extension agreement, and signed by both, that the time should be fur-

ther extended to the 15th of that month. This agreement was made upon an arrangement that she should first pay the expenses provided for by the agreement, the amount of which was by them adjusted at $2000, and was paid. The complainant failed to pay on the 15th of August, and on the 16th, by the orders of Adams, and of a policeman placed there by him for the purpose of enforcing them, the complainant quit the possession of the property, and took away the horses and implements of husbandry used there, except one horse which her husband permitted to remain there for some days, so as to avoid the appearance of abandoning the property, and which afterwards was sent home by Adams. Adams took and kept the hay gathered and crops planted by the complainant. In some conversations after this with the complainant's husband, Smith W. Bullock, Adams told him that he considered the contract at an end, but that he would rather the complainant should have the farm than any other person; and on one occasion, in the autumn of 1865, promised S. W. Bullock to call at his office in New York to make some arrangement. But he did not go, because, as he alleges, he had made some bargain with another person about the sale of the farm, which was not reduced to writing, but which his co-executor, Mr. Day, thought had progressed too far to be abandoned with propriety. The complainant never tendered the money, or offered or tendered herself ready to perform the contract on her part, and never demanded a deed at any time before the bill was filed, or gave any notice to the defendants that she intended to insist on the performance of the contract. Mrs. Lee or her husband had no notice of any kind, of the contract, or of any claim of the complainant, until after the contract to sell to her, or until after she had paid a large part of the purchase money.

Courts of equity do not in general consider the time of performance as the essence of a contract for the sale of lands; but hold that it may become of the essence, by being expressly made so by the contract itself. *Fry on Spec. Perf.,* §§ 710 and 712; 1 *Story's Eq. Jur.,* § 776; *Sugd. on Vendors,*

ch. VIII, § 1, p. 305; Mackreth v. Marlar, 1 Cox. 259; Hudson v. Bartram, 3 Madd. 440; Baynham v. Guy's Hospital, 3 Ves., Jr., 295; Seton v. Slade, 7 Ves. 270; Lloyd v. Rippingale, 1 Y. & Coll. Ex. 410; Hipwell v. Knight, Ibid. 401; Honeyman v. Marryatt, 21 Beav. 14; Benedict v. Lynch, 1 Johns. C. R. 370; Wells v. Smith, 7 Paige 22; 4 Edw. C. R. 697. Or, by notice from the other party insisting upon performance at a time fixed. Fry, § 722. Or, by the subject matter of the contract and its surrounding circumstances. Fry, § 713–715; McKay v. Carrington, 1 McLean 50; Holt v. Rogers, 8 Pet. 420; Levy v. Lindo, 3 Mer. 81; Coslake v. Till, 1 Russ. 376; Wright v. Howard, 1 Sim. & Stu. 190; Young's Adm'r v. Rathbone, 1 C. E. Green 224.

This equitable doctrine often causes great injustice and positive wrong, and ought not to be extended further than established. But parties aware of this doctrine can always provide that time shall be of the essence of the contract, by stipulating that if not performed within the time it shall not bind the party.

In this case, by the express terms of the contract of May 13th, 1865, in the strongest language that can be used for the purpose, time is made of the essence of this contract. It is wise and just that parties to contracts should have the power to make time of the essence. The effect of the doctrine of equity, often has been to keep one party uncertain for months or years, whether the other will perform his contract or not; during this time he cannot go on with arrangements contemplated in the change of property, from doubt whether his former homestead or place of business will be in fact taken, even if the money is not needed for a new undertaking. Unless a party is permitted to stipulate that a contract not fulfilled at a specified time, and such stipulation be enforced in all courts, prudent men will soon cease to make any contract for the sale of lands.

The rule is founded on correct principle as well as authority, and a court of equity has no more right or power to

disregard this express stipulation, than it has to give a year or ten years, or ninety-nine years, for the payment of the whole or one half of the purchase money stipulated for in cash, if it should appear that it is difficult or impossible for the purchaser to pay at the time agreed upon.

The first contract was modified and merged in the second, made on the 13th of May, 1865, by which performance at the day was plainly made of the essence of the contract. The complainant was put out of the premises on August 16th, 1865, and told that the contract was at an end; and, although told that the defendants were willing to make a fair arrangement, the complainant has never since offered to perform the terms of the old contract, or to pay the price agreed upon by it and take the property. If time had not been made the essence of the contract, the fact that she, from August 1st, 1865, to March 27th, 1867, had remained quiescent, and had done nothing to perform her part of the contract, and had not, in fact, been ready or able to perform it, and never called upon the defendants for its performance, would have been a bar to the relief sought; for a party asking for specific performance must have been ready, willing, and anxious to perform on his part. 1 *Story's Eq. Jur.*, § 776; *Fry*, § 732.

Besides, I am not aware of any case that has decreed specific performance at the instance of a party in default, when he has not, before suit, tendered himself ready to perform, and demanded performance from the defendant. Else, a contract breaker, who never intended to perform, might lie passive, and when the party willing to perform, and in no fault, should contract to sell in good faith, use his broken contract as a club to break up the bargain, or to deter a timid purchaser from buying, in fear of an equity suit, which would paralyze him for years in the use of the property. There is ground to suspect that in this case the contract was kept to be used for this purpose.

Under the prayer for general relief, this court might have power to direct the money paid to be refunded to the complainant, if she had any legal right to have it refunded.

This is not, of itself, a matter of equity jurisdiction, as this money could be recovered at law, if she had the right to it. But this court might have jurisdiction, upon the principle adopted in equity courts, that when a matter is before the court properly, for relief which can only be had in equity, the court will grant such other relief, arising out of the facts of the case, to which the party is entitled, although the relief could be had at law. But, in such case, it can grant only the relief which the complainant is entitled to at law. It is common, both in sales by auction and other sales, to stipulate that the per centage or part paid at the contract shall be forfeited if the purchaser does not comply with his contract, and I am not aware of any case where the payment so made has been recovered at law, even where the vendor, upon a re-sale, has received a higher price. I know of no principle upon which such payment can be recovered, either at law or in equity.

The authority referred to by the complainant's counsel, in 2 *Story's Eq. Jur.*, § 798, and the cases cited, which are there cited in the note, are cases where the court held the complainant entitled to relief by specific performance, but the defendant had put it out of his power to perform, by having conveyed to a purchaser without notice, and therefore the court directed compensation, which, no doubt, would include the refunding of the money paid on the contract.

And the English courts have recently refused relief by compensation, even in that class of cases. *Fry on Spec. Perf.*, § 938; *Guillim* v. *Stone*, 14 *Ves.* 128; *Blore* v. *Sutton*, 3 *Mer.* 237; *Todd* v. *Gee*, 17 *Ves.* 273; *Sainsbury* v. *Jones*, 2 *Beav.* 462, affirmed, 5 *Myl. & Cr.* 1.

The bill must be dismissed.